CHARLES HAWES *vs.* JOHN W. HOWLAND.

Bristol. Oct. 25, 1883. — Jan. 29, 1884. FIELD & W. ALLEN, JJ., absent.

An assignee of a recorded mortgage, whose assignment is unrecorded at the time of a sale of the mortgaged land for the non-payment of taxes, but which is recorded before making tender for the purpose of redemption, is a " mortgagee of record," within the meaning of the Gen. Sts. *c.* 12, § 36, *cl.* 4.

In 1874, F., the owner of land, mortgaged it to W. In 1875, W. assigned the mortgage to H., but the assignment was not recorded until 1882. In 1876, W. by mistake discharged the mortgage on the margin of the record thereof in the registry of deeds. In 1877, before the St. of 1877, *c.* 229, took effect, W. and H. brought a bill in equity against F. to have the discharge of the mortgage cancelled. In 1876, after the discharge of the mortgage, and in 1877 and 1878, a tax on the land was assessed to F. as owner, and, not being paid, the land was sold in 1879 to J., by the collector of taxes of the town in which the land was situated, and deeds in due form to J. were executed by the collector, and recorded. In 1882, a decree was entered in the bill in equity ordering a cancellation of the discharge, which decree was recorded, in the same year, in the registry of deeds, and there was no evidence that J. had any knowledge of the suit prior to such record. Soon after, in the same year, H. foreclosed the mortgage by a sale under the power therein contained, and conveyed the land to himself. More than two years after the sale for taxes, but within two years after H. had knowledge of such sale, he made a tender to J., for the purpose of redeeming the land. *Held*, that, on the tender being refused, H. could maintain a writ of entry against J. to recover possession of the land.

WRIT OF ENTRY, dated August 17, 1882, to recover a parcel of land in Freetown. Plea, *nul disseisin*. Trial in the Superior Court, without a jury, before *Pitman*, J., who reported the case for the determination of this court, in substance as follows:

The demandant put in a warranty deed of the premises from Henry T. Willcox to Ellen A. Foster, dated October 6, 1873, and a mortgage of the same premises, dated November 6, 1874, from Foster to Willcox, to secure the sum of $2800, both of

which were duly recorded; also, an assignment of this mortgage, dated June 19, 1875, from Willcox to the demandant, but which was not recorded until May 1, 1882.

It appeared that Willcox, on April 17, 1876, entered a discharge of said mortgage against the same in the registry of deeds; and that, on June 2, 1877, a bill in equity was filed by Willcox and Hawes against Foster, but not against the tenant, setting forth that said discharge was by accident and mistake, and praying that it might be cancelled. [See *Willcox* v. *Foster*, 132 Mass. 320.] ￣ The decree allowing such cancellation, dated April 25, 1882, was put in by the demandant, subject to the exception of the tenant. On May 5, 1882, the decree was recorded in the registry of deeds, with apt references to the discharge.

The demandant also offered a deed from himself as mortgagee to himself as the purchaser under the power of sale in said mortgage. This deed was dated July 17, 1882, and had annexed to it the affidavit required by statute of the execution of the power of sale.

The tenant offered evidence tending to show that the demanded premises were purchased by him, at a sale for taxes, on July 12, 1879, severally assessed for 1876, 1877, and 1878 to Ellen A. Foster, as a non-resident owner; and that all the proceedings in relation to the assessment and sale of said premises were in conformity to the statutes, and were such as to vest a good tax title in the tenant; and he put in three several deeds of conveyance under said sale, (the land being taxed and sold in three several parcels,) from the collector of taxes of the town of Freetown, dated July 17, 1879, and recorded on the same day. It appeared, as recited in said deeds, that said lots were severally bid off by the tenant for the sums of $53.54, $13.92, and $8.08, which were duly paid by him. The tenant entered under his tax title, and continued to hold adversely to the demandant, and the demandant had no possession at any time after said tax sale. There was no evidence of the tenant's knowledge of the suit of *Willcox* v. *Foster*, before the decree in that case was recorded in the registry of deeds.

In rebuttal, the demandant set up a tender of the amount required to redeem the land from the tax sales. The judge

found that the demandant was a non-resident, and that the first notice he had of the sale of the premises for taxes was between August 31 and September 3, 1880; that on May 2, 1882, an agent of the demandant had an interview with the tenant on the subject of redeeming the land; and that the conduct and words of the tenant dispensed with the necessity of a strict tender, and the demandant had done all that the law required of him.

The tenant also contended that the demandant was not a "mortgagee of record," within the Gen. Sts. *c.* 12, § 36, *cl.* 4, at the time the tenant acquired his tax title, and therefore was not entitled to redeem at any time within two years after having actual notice of the sale; but the judge ruled otherwise, and held that it was sufficient that he appeared such of record prior to the offer of redemption.

Upon the whole case, the judge found for the demandant. If there was any error in any of the rulings adverse to the tenant; a new trial was to be had; otherwise, judgment to be entered on the finding for the demandant.

*T. M. Stetson & L. L. Holmes*, for the tenant.

*E. Robinson & S. R. Townsend*, for the demandant.

C. ALLEN, J. The only question in this case is, whether the demandant is to be considered a "mortgagee of record," within the meaning of the Gen. Sts. *c.* 12, § 36, *cl.* 4, so that he was entitled to redeem the land in question within two years after he had actual notice of the tax sale to the tenant. We are of opinion, that one who is a mortgagee at the time of the sale, and who becomes a mortgagee of record before making tender for the purpose of redemption, is to be deemed such mortgagee of record. There are obvious reasons for such extension of time in favor of mortgagees over simple grantees. They hold their title merely for security, and would ordinarily have nothing to do with the taxes, at least prior to the enactment of the St. of 1881, *c.* 304, which provided for assessing the taxes upon mortgagees in certain cases. At the time of the tax sale, the demandant held an unrecorded assignment of a recorded mortgage. An assignee of a mortgage is a mortgagee within the meaning of the statute; *Faxon* v. *Wallace*, 98 Mass. 44; and he need not record his assignment until after bringing an action to foreclose. *Wolcott* v. *Winchester*, 15 Gray, 461. The original

mortgagee, without authority, after his assignment to the demandant, and prior to the tax sale, had assumed to discharge the mortgage upon the record; so that apparently the mortgage was discharged. But he had also brought a bill in equity seeking to have that discharge cancelled, on the ground that it was entered upon the record through mistake; and a decree of cancellation was finally passed. The effect of this decree, as between the parties, was to put them in the same position as if the discharge had never been made. The tax sale was made during the pendency of this suit; and the tenant, as purchaser, is affected in the same manner as if he had notice of the suit. 1 Story Eq. Jur. § 405. *Haven* v. *Adams*, 8 Allen, 363, 366. He bought the title of Foster, the mortgagor, to whom the taxes were assessed. It is the same as if he had bought directly from Foster, and he stands in a position of privity with her. She was a defendant in the bill for cancellation, and of course would be bound, and the purchaser at the tax sale is bound also. The St. of 1877, *c.* 229, which provided that a *lis pendens* concerning land should not affect persons other than the parties thereto, unless a memorandum thereof should be recorded in the registry of deeds, contained an express provision in § 3, that it should not apply to cases then pending; and that statute did not go into effect until twelve days after this suit in equity was begun. As to the tenant, therefore, the demandant stands as if the discharge upon the record had never been made. We need not consider whether the same result must not have been reached, independently of the doctrine of *lis pendens*.

> *Judgment for the demandant.*